592 A.2d 769

**GREAT LAKES REHABILITATION HOSPITAL, Lake Erie Institute of Rehabilitation and Nittany Valley Rehabilitation Hospital, Petitioners,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF HEALTH, Clearfield Hospital, Shenango Valley Medical Center, Titusville Area Hospital, Meadville Medical Center and St. Clair Memorial Hospital, Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 5, 1991.

Decided May 31, 1991.

Kathleen Herzog Larkin, and George J. Krueger, Philadelphia, for petitioners.

Ruth E. Granfors, Harrisburg, Barbara A. Blackmond, Philip G. Kircher and Seymour J. Schafer, Pittsburgh, for respondents.

Before DOYLE and COLINS, JJ., and BARBIERI, Senior Judge.

DOYLE, Judge.

Before us in our original jurisdiction are preliminary objections to a First Amended Petition for Review in the nature of an action in equity, an action in mandamus and a petition for declaratory relief. The petition was filed by Great Lakes Rehabilitation Hospital, Lake Erie Institute of Rehabilitation and Nittany Valley Rehabilitation Hospital (collectively Petitioners). Petitioners are Medicare-certified rehabilitation hospitals which, pursuant to Certificates of

Need (CONs) provided by the Department of Health (Department), provide comprehensive rehabilitative care through "medicare excluded" units. Clearfield Hospital, Shenango Valley Medical Center, Titusville Area Hospital, Meadville Medical Center and St. Clair Memorial Hospital (collectively Respondent Hospitals) are alleged to be community hospitals licensed by the Department as general acute care hospitals.[1] The Department is the agency charged with issuing CONs in accordance with the provisions of the Health Care Facilities Act (Act), Act of July 19, 1979, P.L. 130, *as amended*, 35 P.S. §§ 448.101–448.904.

Section 707(a) of the Act, 35 P.S. § 448.707(a), provides that an application for a CON shall be "recommended, approved and issued" when the application substantially meets certain statutorily enunciated requirements "provided that each decision, except in circumstances which pose a threat to public health, shall be consistent with the State health plan." Further, Section 701 of the Act, 35 P.S. § 448.701, prohibits establishment of new institutional health care services without first obtaining a CON. When a hospital proposes to offer a particular health care service for which it believes that a CON is not required under the Act, it can submit a letter of intent and the Department, if it agrees a CON is not needed, will issue a "determination of nonreviewability" to the inquiring hospital. The determination of nonreviewability allows the provider to forego the CON before commencing the service.

Petitioners aver that the 1982–1987 State Health Plan approved in 1983 by then-Governor Thornburgh recognized within Chapter 37, entitled "Rehabilitative Services," three levels of in-patient rehabilitation care: (1) comprehensive rehabilitation care (2) intermediate rehabilitation care and (3) therapy services.

[1] We note that St. Clair Memorial Hospital was added as a Respondent in the First Amended Petition for Review as was Sharon General Hospital. The record reflects that Sharon General Hospital is no longer actively involved in this case.

In July 1985 the Department established a Task Force "to define the rehabilitation system and its components and to develop statewide goals plus standards and criteria for use in Certificate of Need Review." In 1986 the report and recommendations of the task force were approved and adopted as an amendment to the State Health Plan. Petitioners aver that the 1986 amendment "superseded and replaced" Chapter 37 of the State Health Plan and that the amendment eliminated the distinction between intermediate and comprehensive levels of in-patient rehabilitation care as these terms were employed in the 1982–1987 State Health Plan. According to Petitioners, under the amendment the term "comprehensive rehabilitation care" refers to a multidisciplinary team approach of care provided by *either* a rehabilitation hospital *or* a discrete rehabilitation unit within a general hospital, rather than to one of three specific levels of care provided to a patient.

Petitioners plead that since the 1986 amendment approximately twelve hospitals have sought and received determinations of nonreviewability from the Department "for the ostensible purpose of offering intermediate rehabilitation services." They aver that these hospitals asserted that they were already providing rehabilitation services and merely wanted to "cluster" the rehabilitation beds into an intermediate rehabilitation unit.

According to Petitioners' petition, the Department issued its determinations of nonreviewability to the twelve hospitals based upon "unattested representations rather than upon a formal evidentiary hearing." Petitioners claim that after receiving the determinations of nonreviewability the hospitals then sought, and at least seven received, exclusions from the DRG-based prospective payment system under the Medicare program. At the time these hospitals sought the determinations of nonreviewability, they were providing rehabilitation services under the DRG-based prospective payment system which system limits the amount of the reimbursement to a preset amount regardless of the cost to the hospital to provide the service. By gaining

"medicare-excluded status," however, the hospitals could be reimbursed for their actual costs. In order to qualify for medicare-excluded status, however, a hospital must provide "intensive" rehabilitation services. *See* 42 C.F.R. § 412.-23(b)(2) and § 412.29(a). As explained in a discussion paper generated by the Task Force and attached to the petition for review, "an inequity exists" because:

A hospital can hold itself out to the Department of Health to offer an intermediate rehabilitation service in medical surgical beds not subject to Certificate of Need review, while at the same time, holding itself out to [the Federal Health Care Finance Administration] to be a comprehensive intermediate rehabilitation service for purposes of securing an exemption from prospective reimbursement.

Each of the Respondent Hospitals in this case is alleged to have sought from the Department a determination of nonreviewability. At the time this lawsuit was commenced the Department had not responded to the requests for said determinations.[2] Petitioners allege that had Respondent Hospitals submitted CON applications, Petitioners, as competitors, would have had standing to challenge the CON applications. They further aver that the rehabilitation services which Respondent Hospitals seek to offer are in fact "new institutional health services" within the meaning of Section 701 of the Act,[3] and, hence, that Respondent Hospitals should be required to apply for CONs. Finally, Peti-

---

2. We were advised by letter that St. Clair Memorial Hospital has since received a determination of nonreviewability.

3. Under Section 701 "new institutional health services," in summary, includes the construction, development or other establishment of a new health care facility or health maintenance organization; or an expenditure of in excess of $150,000 by or on behalf of such entity which, under generally accepted accounting principles, is a capital expenditure; or the obligation of a capital expenditure which results in the addition of a health care service or a certain percentage of increase in bed capacity; or the addition of a health service which would have an operating expense in excess of the minimum established under certain federal standards; or major medical equipment used under certain circumstances; or expenditures in excess of $150,-000 made in preparation for the offering or development of a new institutional health service or any binding arrangement or financial commitment for same.

tioners aver that the Department, by allowing Respondent Hospitals, via determinations of nonreviewability, to establish rehabilitation units, has failed to enforce the Act.

Petitioners seek (1) an order declaring that the 1986 amendment to the State Health Plan supersedes and replaces in its entirety Chapter 37 of that Plan; (2) an injunction enjoining the Department from granting determinations of nonreviewability to Respondent Hospitals; (3) a declaration that providing "intermediate rehabilitation" services at Respondent Hospitals requires CON approval; (4) an order that Respondent Hospitals submit CONs and cease providing rehabilitation services until decisions on the CONs are rendered; (5) an order that a CON is needed before a hospital may seek medicare-excluded status; (6) an order staying all Departmental action on letters seeking determinations of nonreviewability until the Task Force has submitted its recommendations to the Secretary of Health and those recommendations are adopted as part of the State Health Plan. Alternatively, Petitioners seek an order directing the Department to hold hearings before issuing determinations of nonreviewability.

In response to the Petitioners' suit, the Department and Respondent Hospitals have filed various preliminary objections including the assertion that Petitioners lack standing.[4] We consider that issue first. In *Powers v. Department of Health*, 121 Pa.Commonwealth Ct. 321, 550 A.2d 857 (1988), *petition for allowance of appeal denied*, 524 Pa. 636, 574 A.2d 75 (1989) (*Powers I*), a potential competitor sought to appeal a determination by the Department of nonreviewability in our appellate jurisdiction and alternatively to enjoin the entity from beginning to provide the medical services. We held that Section 703 of the Act, 35 P.S. § 448.703, did not grant standing to a potential competitor to obtain from the Department a due process hearing on a determination of

4. Other preliminary objections include failure to join indispensable parties, lack of subject matter jurisdiction, failure to exhaust administrative remedies and demurrers.

nonreviewability.[5] We further held, in the alternative, that the petitioners lacked standing to bring an original jurisdiction action in this Court to enjoin the entity which had obtained the determination of nonreviewability from continuing with its plan to provide medical services.[6]

In *Powers v. Department of Health*, 131 Pa.Commonwealth Ct. 469, 570 A.2d 1350 (1990) (*Powers II*), the Department received a request for a determination of nonreviewability from Health Images Pennsylvania, Inc. Potential competitors sought and were granted leave to inter-

---

**5.** Section 703 mandates that notice of completed applications for CONs be published and that all "affected persons" be notified of the date by which a public hearing must be demanded. "Directly affected persons" are permitted to file objections and if they do, they become parties. "Affected persons" may request a hearing and "any person directly affected" may examine witnesses. "Affected persons" is defined as:

> A person whose proposal is being reviewed for purposes of certificate of need, the health systems agency for the health service area in which the proposed new institutional health service is to be offered or developed, health systems agencies serving contiguous health service areas, health care facilities and health maintenance organizations located in the health service area which provide institutional health services, and those members of the public who are to be served by the proposed new institutional health services and those agencies, if any, which establish rates for health care facilities and health maintenance organizations located in the health systems area in which the proposed new institutional health service is to be offered or developed.

"Persons directly affected" is defined as:

> A person whose proposal for certificate of need is being reviewed, members of the public who are to be served by the proposed new institutional health services, health care facilities and health maintenance organizations located in the health service area in which the service is proposed to be offered or developed which provide services similar to the proposed services under review, and health care facilities and health maintenance organizations which prior to receipt by the agency of the proposal being reviewed have formally indicated an intention to provide such similar service in the future and those agencies, if any, which establish rates for health care facilities and health maintenance organizations located in the health systems area in which the proposed new institutional health service is to be offered or developed.

Section 103 of the Act, 35 P.S. § 448.103.

**6.** We declined to say whether the case was properly brought in our original or our appellate jurisdiction and ruled in the alternative.

vene before the Department[7] although no due process hearing was held. Thereafter, the Department issued a determination of nonreviewability and the potential competitors attempted to appeal to this Court. The Department argued that the potential competitors did not have standing to appeal. We agreed. We held, relying on *Powers I,* that potential competitors do not have standing under the Act to appeal a determination of nonreviewability on the basis that the competitor was not afforded a due process hearing. We wrote:

> Our resolution of this issue turns upon the fact that if we extend standing to Petitioners then we must also hold that they are entitled to notice of the letter of intent along with other aggrieved persons and we find nothing in the statutory scheme which provides for such notice to be effected ... Because there are no provisions in the Act requiring notice of the preliminary inquiry to competitors and other members of the general public, we must conclude that the legislature did not wish to confer upon them the rights to challenge the preliminary inquiry. Merely because the Department has set up a system permitting a preliminary inquiry ... does not mean that others foreign to the inquiry have rights to challenge its basis.

*Powers II,* 131 Pa.Commonwealth Ct. at 473–74, 570 A.2d at 1352 (quoting *Powers I,* 121 Pa.Commonwealth Ct. at 329, 550 A.2d at 861–62 (citation omitted)). The competitors in *Powers II* maintained in the alternative, however, that they had a right to appeal under Section 702 of the Administrative Agency Law, 2 Pa.C.S. § 702. That Section states:

> Any person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals ...

7. In granting the petition to intervene, the Department limited the potential competitor's status by indicating intervenor status would cease once the determination of whether or not a CON was needed was made and that intervenor status did not confer upon the potential competitor party standing and its attendant appeal rights.

As we explained in *Powers II*, the question of whether one has a "direct interest" so as to grant standing under Section 702 must be determined by looking at the substantive law which the appealing party seeks to enforce. In so doing we, in *Powers II*, recognized that the purpose of the Act is to promote, not discourage, competition and thus concluded that potential competitors lacked standing to appeal determinations of nonreviewability.

Petitioners here use the same substantive body of law (the Act) to establish their "aggrieved" status and standing. Their case, however, is of a different type than either *Powers I* or *Powers II*. Both of those cases involved attempts to challenge specific determinations of nonreviewability. Petitioners here do not seek to do that. Rather they seek to challenge the standards which the Department uses to make its determinations of nonreviewability. Specifically, Petitioners challenge the Department's position that there continues to exist three rather than two levels of rehabilitative care for purposes of determining whether a CON is needed.

The seminal case pertaining to standing, *William Penn Parking Garage Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975), requires that the persons bringing an action be aggrieved. Aggrievement will be found if the complaining party can show a direct, substantial and immediate injury. *Id.* The Court also wrote in that case, "[i]t is ... clear that standing will be found more readily where protection of the type of interest asserted is among the policies underlying the legal rule relied upon by the person claiming to be 'aggrieved.' " *Id.*, 464 Pa. at 198, 346 A.2d at 284.

We clearly held in both *Powers I* and *Powers II* that a competitor lacks standing under the Act to challenge a determination of nonreviewability. Further, *Powers II* made it clear that the Act's purpose is to promote competition. Petitioners here seek to exempt themselves from the *Powers* holdings by challenging the action *before* a determination of nonreviewability is even issued. If anything, their interest at such a preliminary stage would be even less than

after the determination of nonreviewability were issued. Therefore, we believe that the Act, as interpreted in the *Powers* cases, does not grant standing to Petitioners to bring this action.

Having concluded that Petitioners lack standing to bring an original action in this Court, we shall sustain the preliminary objection relating to standing and dismiss the First Amended Petition for Review.[8]

## ORDER

NOW, May 31, 1991, it is hereby ordered that Petitioners' preliminary objection pertaining to lack of standing is sustained and the First Amended Petition for Review is dismissed.

---

**8.** Because of our disposition of this case, we need not consider the other preliminary objections.